IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF PENNSYLVANIA AS SUCCESSOR BY MERGER TO PARK VIEW FEDERAL SAVINGS BANK, | ) ) ) ) | Civil Action No. 14-1007 |
| Plaintiff, | ) ) ) | United States Magistrate Judge Cynthia Reed Eddy[1] |
| v. | ) ) | |
| TRANSAMERICA LIFE INSURANCE COMPANY & CLARK CONSULTING, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[2]

This is a contract dispute initiated by Plaintiff First National Bank of Pennsylvania, as successor by merger to Park View Federal Savings Bank ("F.N.B." or "Plaintiff") seeking to recover $2,585,776.11 from Defendants Transamerica Life Insurance Company ("Transamerica") and Clark Consulting, Inc. ("Clark")[3] (collectively referred to as "Defendants"). Both Transamerica and Clark are indirect subsidiaries of AEGON, USA, Inc. and AEGON NV. Pending before the Court is Defendants' motion to dismiss (ECF No. 6) the

---

[1] By consent of the parties, (ECF Nos. 9, 12), and pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

[2] In the event that the parties' briefs contain different page numbers at the bottom of the page than at the top, the Court will cite to the number at the top of the page located in the ECF stamp.

[3] In their motion to dismiss, Defendants represent that Clark's name is now "Clark Consulting, LLC."

1

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons which follow, said motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND[4] & PROCEDURAL HISTORY

Purchase of BOLI Policies

On October 13, 2006, Park View Federal Savings Bank ("Park View") entered into two Bank-Owned Life Insurance policies (collectively referred to as "the policies").[5] The first policy was entered into with Transamerica ("Policy 1"). (Compl. ¶ 17, ECF No. 1). The second policy was entered into with Life Investors Insurance Company of America ("Life Investors") ("Policy 2"). (*Id.* at ¶ 25). Life Investors subsequently merged with Transamerica. (*Id.* at ¶ 26). Therefore, F.N.B. asserts that "by virtue of the merger, Transamerica became contractually responsible for fulfilling all promises obligations and duties to Park View under Policy 2." (*Id.* at ¶ 26). The policies were "substantially similar" and were "assignable by Park View – so long as the assignment was made in writing, filed at Transamerica's Home Office, and … approved by Transamerica." (*Id.* at ¶¶ 18, 25).

Defendant Clark acted as a broker under the policies, handling "all correspondence and material related to the [policies]." (*Id.* at ¶¶ 13, 23). A copy of each policy is attached to the complaint. (Compl. Ex. A, ECF No. 1-2); (Compl. Ex. B, ECF No. 1-3).

Investment in the Stable Value Fund

---

[4] The recitation of facts is taken entirely from the complaint. As discussed *infra,* the Court has not considered the additional documents attached to Defendants' brief in support of their motion to dismiss.

[5] According to Plaintiff, "BOLI products are designed to assist corporations in managing employee-related expenses by providing steady tax-free returns to purchasers for use in funding current and future employee benefit expenses such as healthcare, disability, dental and group life insurance." (Compl. ¶ 14). Both policies were "purchased on the life of certain executives and/or employees of Park View, with individual policy numbers for those specific individuals …" (*Id.* at ¶¶ 17, 25).

Under the policies, Park View initially allocated its investment fund election in the JPMorgan Core Mortgage Fund. (Compl. ¶ 27). In August 2009, Park View changed its investment fund election allocation to JPMorgan Stable Value Fund ("Stable Value Fund") to attain "greater protection from fluctuations in market interest rates." (*Id.*). As a result, in an effort "[t]o protect Park View's investment in the Stable Value Fund, Transamerica entered into contractual obligations with certain third parties to grow/ensure the investment." (*Id.* at ¶ 28). The complaint, however, does not indicate that Park View had access to these documents before it decided to invest in the Stable Value Fund or that these third-party agreements were incorporated into the policies.

Park View's Merger with F.N.B.

On October 12, 2013, Park View merged into F.N.B. (*Id.* at ¶ 29). On October 16, 2013, Park View and F.N.B. completed the requisite forms to transfer ownership of the policies to F.N.B., which were accepted by Transamerica. (*Id.* at ¶ 30). The transfer forms are attached to the Complaint at Exhibit C. (ECF No. 1-4).[6] Thereafter, F.N.B made timely payments of the entire premium amount and Defendants accepted the same. (Compl. ¶ 31).

F.N.B.'s Exercise of its Option to Surrender the Policies

The policies each contained a provision allowing the Policyowner to surrender the policies. On March 4, 2014, F.N.B sent Transamerica written notice that it was surrendering the policies. (*Id.* at ¶ 32). The surrender notice was accepted by Defendants on March 5, 2014. (*Id.* at ¶ 34). Plaintiff asserts that, based upon a March 2014 Monthly Asset Report prepared by Clark, the Cash Surrender Value of the policies at the time of surrender was $21,249,801.46. (*Id.* at ¶ 33).

---

[6] The complaint also alleges that, by virtue of the merger, the policies were transferred from Park View to F.N.B. by operation of law. (Compl. ¶ 30).

3

Shortly thereafter, F.N.B. received two letters from Defendants of draft language, "without any instruction," which were "to be sent by F.N.B. to Transamerica for Transamerica's submission to the Stable Value Fund's manager: JP Morgan Chase Bank, National Association ("JPM")." (*Id.* at ¶ 35). "These letters were requested to F.N.B. to purportedly facilitate JPM's reimbursement to Transamerica of certain amounts due to F.N.B. as part of F.N.B.'s investment in the Stable Value Fund," known as the Bank Enhancement Amount, which "were part of the Cash Surrender Value under the Policies." (*Id.* at ¶ 36).

On March 10, 2014, F.N.B. submitted these requested letters to Defendants, which were in turn submitted by Defendants, after their review/approval, to JPM. (*Id.* at ¶ 37). F.N.B. was never notified by Defendants that these materials were in any way deficient. (*Id.* at ¶ 39). On March 12, 2014, Defendants advised F.N.B. that Transamerica was not going to pay F.N.B. the Bank Enhancement Amount under the Stable Value Fund. (*Id.* at ¶ 40).

Defendants reasoned that F.N.B was not entitled to the Bank Enhancement Amount because "F.N.B. could not represent (as Transamerica says is required in Transamerica's third-party agreement with JPM and/or others) that the Policies 'have not been previously owned by an entity other than the Policyowner.'" (*Id.* at ¶ 42). F.N.B. provides that "not only does that language never appear in any contract signed by F.N.B. (of Park View), Transamerica has repeatedly acknowledged that F.N.B. *is* the Policyowner and, accordingly, *is* entitled to surrender the Policies." (*Id.* at ¶ 43) (emphasis in original).

Transamerica agreed to pay F.N.B. a Cash Surrender Value of $17,999,586,05 under the Settlement Certificate, but F.N.B. demands that it is entitled to $20,585,362.16 (the value of the policies at surrender minus a surrender charge). F.N.B. asserts that "[w]ith the assistance, cooperation and manipulation of Clark, Transamerica's conduct − to use a manufactured,

superficial technicality to avoid its legal obligation under the Policies – is on its face an act of bad faith." (*Id.* at ¶ 45). Accordingly, on July 28, 2014, F.N.B. initiated this action against Defendants in an effort to recover $2,585,776.11 – the difference between the amount that Transamerica offered under the Settlement Certificate and the amount that F.N.B. demands it is entitled to receive. F.N.B.'s complaint asserts the following three counts: (1) Transamerica breached its contractual obligations under the policies, (2) Transamerica and Clark breached their fiduciary duties, and (3) Transamerica's conduct constituted insurance bad faith. On August 22, 2014, Defendants filed the present motion to dismiss (ECF No. 6) and brief in support thereof (ECF No. 7). The matter has been fully briefed, *see* (ECF Nos. 6, 7, 16, 18, 21), and is ripe for disposition.

## II. STANDARD OF REVIEW – F.R.C.P. 12(b)(6)

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant

has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ⎯⎯ U.S., ⎯⎯ 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

<u>Breach of Contract</u>

Cash Surrender Value is defined in Policy 1 as "[t]he amount payable upon surrender of the policy equal to the Policy Value as of the date of surrender, less the surrender charge, less indebtedness…" (Compl. Ex A at 2).[7] In turn, "Policy Value" is calculated by considering the

---

[7] Neither the complaint nor the parties' briefs cite any applicable definitions for "Cash Surrender Value" in Policy 2, and instead only rely on the definitions in Policy 1. In reviewing Policy 2, the Court could not find a definition entitled "Cash Surrender Value;" rather, it appears that such an amount is governed by the definitions of "Cash Value" and "Net Cash Value." *See* (Compl. Ex. B. at 3-4).

7

"value of the policy's accumulation units in each Subaccount," along with other factors. (*Id.* at 2, 21). The parties agree that the Stable Value Fund, which was selected by Park View in August 2009, is the only Subaccount in the policies.

In support of their motion to dismiss, Defendants attached the following additional documents, which they contend the Court must consider: (1) a Supplement to a prior Private Placement Memorandum (Defs.' Br. in Supp. Ex. A, ECF No. 7-1), (2) a Stable Value Agreement ("SVA") between Transamerica and its affiliate, Commonwealth General Corporation (Defs.' Br. in Supp. Ex B, ECF No. 7-2), and (3) an Enhancement Amortization Agreement ("EAA") between Commonwealth General and JPM (Defs.' Br. in Supp. Ex. C, ECF No. 7-3). Defendants acknowledge that Park View was not a party to the SVA or the EAA, however, they insist that each of the attached documents were "merely one component of a single, integrated contract to which Park View agreed to be bound." (Defs.' Br. in Supp. at 8, ECF No. 7). According to Defendants, these documents establish that when F.N.B. surrendered its policies, the Bank Enhancement Amount was properly deducted from the Stable Value Fund because F.N.B. was not the Policyowner for the entire duration of the policies, which was a condition under the EAA. Therefore, Defendants assert that under the specific terms of the SVA and EAA, F.N.B is not entitled to receive the approximately $2.5 million that it seeks from Defendants because JPM never paid Transamerica the Bank Enhancement Amount under the Stable Value Fund. According to Defendants, Park View was provided all of these documents prior to Park View's decision to invest in the Stable Value Fund.

---

Regardless, the parties are in agreement that the policies operate the same with respect to the method of surrendering the policies and have not asserted that there are any material differences regarding this aspect of the policies.

While the complaint does provide that "Transamerica entered into contractual obligations with certain third parties to grow/ensure the investment" in the Stable Value Fund, (Compl. ¶ 28), it does not reference or state that Park View was provided with any of the above documents attached by Defendants before it decided to invest in the Stable Value Fund. F.N.B. argues that the Court should not consider the SVA and EAA because they are unexecuted, third-party agreements which are not undisputably authentic. (Pl.'s Resp. Br. at 16, ECF No. 16-19). F.N.B. notes that the documents attached by Defendants have not been signed by any entity and that "many are marked as drafts." (*Id.* at 17-18). F.N.B. asserts that because they are not undisputably authentic and because F.N.B.'s claims are not based upon them, the Court must disregard them. (*Id.* at 18) (citing *Reginella Const. Co., Ltd. v. Travelers Cas. & Sur. Co. of America*, 568 F. App'x. 174, n. 5 (3d Cir. 2014) ("A court … may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based upon that document.") (internal quotations and citation omitted)). These documents are not undisputably authentic because F.N.B. has challenged their authenticity.[8] *See Yeakel v. Cleveland Steel Container Corp.*, 2011 WL 536536, *1 n. 1 (E.D. Pa. 2011). Further, the complaint is not based upon either the SVA or EAA, and it adequately states a claim for breach of contract under the policies.[9]

The complaint alleges that the policies were assignable between Park View and F.N.B. so long as certain conditions were met. F.N.B. avers that it satisfied all of the necessary conditions

---

[8] In their Reply Brief, Defendants assert that the documents it attached were the "exact documents" provided to F.N.B., but they offered to submit the signed versions as additional exhibits. (Defs.' Reply Br. at 5, ECF No. 18). However, because the Court must draw all reasonable inferences in favor of the nonmovant, F.N.B., and F.N.B. disputes the authenticity of these documents, this is unnecessary.

[9] Given that the Court is not considering these additional documents attached by Defendants, it is unnecessary to address whether Plaintiff was a third-party beneficiary of those agreements.

in order for it to become the Policyowner and that Transamerica accepted this transfer in accordance with the provisions in the policies.[10] Further, when F.N.B. elected to surrender the policies, it contends that, based upon a Clark Consulting March 2014 Monthly Asset Report, that the Cash Surrender Value of the policies was $21,249,801.46, and after subtracting the surrender charge, the total amount it is owed is $20,585,362.16. However, Transamerica refused to pay F.N.B. the entire amount due and only offered to pay $17,999,586.05. This satisfies all of the elements of a breach of contract theory. *See McShea v. City of Philadelphia*, 995 A.2d 334 (Pa. 2010) ("The necessary material facts that must be alleged for [a breach of contract] action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach.").[11]

Defendants contend that Plaintiff's reliance on the March 2014 Monthly Asset Report is misplaced because the policies, and not any other document, establish the Cash Surrender Value, which is to be calculated as of the date that the notice of surrender is received by Transamerica. Defendants argue that the report relied upon by F.N.B. was only accurate until February 28, 2014. However, only four to five days passed between February 28, 2014 and the date that Transamerica received F.N.B.'s notice of surrender, and nothing submitted by the parties which the Court may consider suggests that this number was reduced during that short time period. Indeed, Defendants position that the Cash Surrender Value was properly reduced "during the course of March" as a result of F.N.B. failing to provide accurate information to JPM, *see See* (Defs.' Reply Br. at 4, ECF No. 18), is incongruent with the well-pleaded facts, which of course, the Court must accept as true. Logically, under Defendants' version of the facts, the Cash

---

[10] Because Plaintiff has properly pled that it is the appropriate Policyowner of the policies, the Court need address the parties' disagreement regarding the applicability of the National Bank Act.

[11] Pennsylvania law and Ohio law are the same with regard to pleading a breach of contract theory.

Surrender Value would not have been reduced until *after* Transamerica received F.N.B.'s notice of surrender – the event triggering valuation of the Cash Surrender Value. This is inconsistent with the facts and theory of liability advanced by Plaintiff, and because the Court is not considering the SVA or EAA at this time, Defendants' argument must be rejected.

Therefore, at this preliminary stage of the litigation and in light of the applicable pleading standards, F.N.B. has adequately asserted a claim against Transamerica for breach of contract. The parties will be given the opportunity to explore the above factual disputes through discovery, including the authenticity issues and potential applicability of the additional agreements submitted by Defendants, and may reassert their positions at a subsequent date.

Insurance Bad Faith

Defendants also argue that F.N.B. failed to state a claim against Transamerica for Insurance Bad Faith (Count III) because F.N.B. did not adequately allege an unreasonable denial of benefits, and alternatively, did not establish that Transamerica knew of or recklessly disregarded its lack of reasonable basis in denying the claim. (Defs.' Br. in Supp. at 25-26). However, the Court finds that the facts averred in the complaint sufficiently allege that Transamerica did not pay the entire amount that F.N.B. was owed under the policies, that said denial was unreasonable, and that Transamerica knew that it lacked a reasonable basis in denying the claim. Accordingly, F.N.B. has adequately stated a claim against Transamerica for insurance bad faith.[12]

---

[12] As Plaintiff observes, this standard is satisfied under the applicable law of both Pennsylvania and Ohio.

Breach of Fiduciary Duty

A. Transamerica

Defendants contend that F.N.B.'s claims for breach of fiduciary duty against Transamerica should be dismissed because (1) Transamerica did not owe F.N.B. a fiduciary duty under Pennsylvania law and (2) this claim is duplicative of its insurance bad faith claim. F.N.B. responded by arguing that under Ohio law, which it contends governs, Transamerica owed it a fiduciary duty. Although there is a difference between the law of Pennsylvania and Ohio as to whether an insurance company owes its insured a fiduciary duty in handling a claim, *see Keppol v. State Farm Ins.*, 2013 WL 300742, * 3 (E.D. Pa. 2013) (finding that, in general, no fiduciary duty is owed in Pennsylvania); *Andrews v. Nationwide Mut. Ins. Co.*, 2012 WL 5289946, *6 (Ohio Ct. App. 2012) (finding that a fiduciary duty is owed in Ohio), the claim is nevertheless properly dismissed under the laws of both states. Thus, no actual conflict exists.

Under the law of both Pennsylvania and Ohio, claims for breach of fiduciary duty are duplicative of claims for insurance bad faith. *See Keppol v. State Farm Ins.*, 2013 WL 30072, *3 (E.D. Pa. 2013) ("Pennsylvania courts have dismissed claims for breach of fiduciary duty in the insurance context as duplicative of statutory bad faith claims."); *Thompson v. Cmty. Ins. Co.*, 2004 WL 5345144, *8 (S.D. Ohio 2004) (dismissing claim for breach of fiduciary duty against an insurance carrier because Ohio courts treat those claims and bad faith claims against insurance carriers "interchangeably"); *International Fidelity Ins. Co. v. Vimas Painting Co., Inc.* 2008 WL 926577 *4 (S.D. Ohio 2008) ("Ohio courts have held that such a fiduciary relationship exists in the context of insurance contracts, and that an insurer therefore has a[n] implied duty to act in good faith in handling the claims of its insured… Because of this fiduciary relationship, an insured may pursue a *bad faith* tort claim against the insurer.") (emphasis added)).

Accordingly, because F.N.B. asserted a viable claim for insurance bad faith against Transamerica as discussed *supra*, its claim for breach of fiduciary duty against Transamerica is duplicative and barred under both Pennsylvania and Ohio law, and thus, is dismissed.

B. Clark

There is an apparent actual conflict of law with regard to F.N.B.'s claim for breach of fiduciary duty against Clark. Defendants contend that Pennsylvania law applies, and thus, Clark does not owe F.N.B. a fiduciary duty. F.N.B. contends otherwise, arguing that Ohio law governs and that it has properly alleged a cause of action against Clark for breach of fiduciary duty. However, the Court finds that at this stage, where the record is not fully developed and there remain several factual issues to be resolved, a conflict of law analysis would be inappropriate. *Reginalla Const. Co., Ltd. v. Travelers Cas. and Sur. Co. of America*, 949 F.Supp.2d 599, 610 (W.D.Pa. 2013), *aff'd.* 568 Fed. App'x 174 (3d Cir. 2014) ("A choice of law analysis is appropriate at the Rule 12(b)(6) stage when it is not dependent on factual issues that can be probed only with the assistance of a fully developed record."); *Harper v. LG Elec. USA, Inc.*, 595 F.Supp.2d 486, 490-491 (D.N.J. 2009) (deferring its choice-of-law analysis until the record is more fully developed such that the court could more appropriately consider the governmental interest analysis). Therefore, because F.N.B. asserts that Ohio law applies to its claim for breach of fiduciary duty against Clark, the Court will, solely for purposes of the present motion, assume that is the case. To that end, the Court finds that if Ohio law were to apply to this action, F.N.B. has plausibly stated a claim for relief against Clark for breach of a fiduciary duty.

The complaint alleges facts in which the Court can reasonably infer that Clark acted as an insurance broker under the policies and owed a fiduciary duty to Plaintiff, that Clark breached its fiduciary duty by assisting and cooperating with Transamerica in the manipulation of the Cash

Surrender Value owed to F.N.B., and that F.N.B. suffered financial harm as a result. *See Smith v. Robbins & Myers, Inc.,* 969 F.Supp.2d 850, 866 (S.D. Ohio 2013) ("To support a claim for breach of fiduciary duty [in Ohio], a plaintiff must allege: '(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) injury proximately cause by the breach.'"); *Lawarre v. Fifth Third Secs., Inc.*, 2012 WL 3834052, *2 (Ohio Ct. App. 2012) ("A broker or financial advisor has a fiduciary relationship with its clients."); *Friedman v. Ohio Dept. of Ins.*, 2003 WL 22208805, *2 (Ohio Ct. App. 2003) (observing that an insurance broker "owes wide-ranging fiduciary duties to the customer to manage [its] account in accordance with the customer's needs and objectives."). Consequently, Defendants' motion to dismiss this claim is denied. The parties will be given the opportunity to fully develop the factual record and explore the controlling law based on the same, and may reassert their positions at a later date.

## IV. CONCLUSION

Defendants' motion to dismiss the complaint will be granted in part and denied in part. F.N.B.'s claim against Transamerica for breach of fiduciary duty in Count II will be dismissed with prejudice. The remaining claims against Transamerica and Clark shall proceed. An appropriate Order follows.

January 23, 2015.

                    By the Court:

                    s/ Cynthia Reed Eddy
                    Cynthia Reed Eddy
                    United States Magistrate Judge

cc: all registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF PENNSYLVANIA AS SUCCESSOR BY MERGER TO PARK VIEW FEDERAL SAVINGS BANK, | ) ) ) ) | Civil Action No. 14-1007 |
| Plaintiff, | ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| v. | ) ) | |
| TRANSAMERICA LIFE INSURANCE COMPANY & CLARK CONSULTING, INC., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

**AND NOW**, this 23rd day of January, 2015, in accordance with the foregoing Memorandum Opinion and in consideration of the parties' respective arguments, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (ECF No. 6) is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** insofar as the portion of Count II asserted against Transamerica Life Insurance Company for breach of fiduciary duty is **DISMISSED WITH PREJUDICE**. The remaining portion of the motion is **DENIED.**

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF