IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF PENNSYLVANIA, AS SUCCESSOR BY MERGER TO PARK VIEW FEDERAL SAVINGS BANK, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 14-1007 |
| v. | ) ) | |
| TRANSAMERICA LIFE INSURANCE COMPANY & CLARK CONSULTING, INC., | ) ) ) ) | |
| Defendants. | ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| TRANSAMERICA LIFE INSURANCE COMPANY, CLARK CONSULTING, INC., & COMMONWEALTH GENERAL CORPORATION, | ) ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Cynthia Reed Eddy, United States Magistrate Judge

## I.  INTRODUCTION

This action was originally initiated by Plaintiff First National Bank, as successor by merger to Park View Federal Savings Bank ("FNB"), against Defendants Transamerica Life

---

[1] In accordance with 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have the undersigned conduct any and all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit. ECF Nos. 9, 12, 45.

1

Insurance Company ("Transamerica") and Clark Consulting ("Clark") to recover more than $2.5 million relating to the surrender value of two of its insurance policies.² Transamerica and Clark, together with their affiliate Commonwealth General Corporation (which is not a named Defendant), subsequently initiated a third-party action against JPMorgan Chase Bank, National Association ("JPMC"), claiming that if either Transamerica or Clark are found liable to FNB, then JPMC "should rightfully bear that liability."³ Pending before the Court is JPMC's motion to dismiss the second amended third-party complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and alternative motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). After careful review and consideration of the parties' cogent and well-briefed arguments, the Court will, for the reasons that follow, grant JPMC's motion to dismiss for lack of personal jurisdiction.⁴

## II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

For purposes of resolving the pending motion, the Court accepts all of the factual allegations in the second amended third-party complaint (hereafter "the third-party complaint") as true, and draws all reasonable inferences in a light most favorable to Third-Party Plaintiffs Transamerica, Clark, and Commonwealth General.⁵

---

2   See ECF No. 1.

3   See ECF No. 56 at ¶ 62. The Court notes that by agreement of the parties and with the Court's permission, this pleading was amended after JPMC had already filed the pending motion to dismiss. This amendment, however, did not affect or render moot JPMC's pending motion. Therefore, the second amended third-party complaint is the operative pleading herein.

4   Because the Court finds that it does not have personal jurisdiction over JPMC, the Court will not address JPMC's alternative argument that the second amended third-party complaint fails to state a claim under Rule 12(b)(6).

5   See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

In 2006, Park View (which, as discussed below, subsequently merged into FNB) purchased several Bank Owned Life Insurance policies from Transamerica and Transamerica's affiliate.[6] At the time, Park View was headquartered in Ohio and was a wholly-owned subsidiary of an Ohio corporation.[7] Transamerica is an Iowa corporation with its principal place of business in Iowa.[8] The policies were executed in Ohio.[9] Clark acted as an insurance broker in connection with Park View's purchase of these policies. Clark is a limited liability company formed under the laws of Delaware with its principal place of business in North Carolina.[10]

In August 2009, Park View decided to reallocate all of its policy values therein to a stable value subaccount called the "Fixed Stable Value Subaccount."[11] Park View's election of the Fixed Stable Value Subaccount resulted in the formation of multiple agreements between the parties on August 11, 2009.

Specifically, the Fixed Stable Value Subaccount included a (1) Stable Value Agreement ("SVA") between Transamerica and Commonwealth General, and (2) an Enhancement Amortization Agreement ("EAA") between Commonwealth General and JPMC.[12] Commonwealth General is a corporation formed pursuant to the laws of Delaware with its

---

[6] In 2008, Transamerica's affiliate, Life Investors Insurance Company of America, merged into Transamerica, thereby making Transamerica the insurer of all of the policies. ECF No. 56 at ¶ 34.

[7] Gisleson Decl., ECF No. 50-1 at ¶¶ 5-6.

[8] ECF No. 50 at ¶ 2.

[9] ECF No. 1 at ¶¶ 24-26,. Although the third party complaint does not aver where the policies were entered into, Third Party Plaintiffs do not dispute that this occurred in Ohio. To that end, and more significantly, there are no allegations that this occurred in Pennsylvania.

[10] ECF No. 56 at ¶ 3.

[11] Id. at ¶ 9.

[12] Id.

3

principal place of business in Iowa.[13]  JPMC is a national banking association with its principal place of business in Ohio.[14]

In the EAA, JPMC promised, within certain limits and subject to certain conditions which had to be "strictly satisfied," to pay an amount known as the "Bank Enhancement Amount" to Commonwealth General.[15]  In the SVA, Commonwealth General promised that if it received the Bank Enhancement Amount from JPMC, then it would make such payment to Transamerica to be included in the Fixed Stable Value Subaccount.[16]  However, the SVA provided that if JPMC did not pay Commonwealth General the Bank Enhancement Amount pursuant to the EAA, then the Bank Enhancement Amount would be deducted from the policies' "Investment Value."[17]  In turn, the Bank Enhancement Amount would not be included in the calculation for "Policy Value" when calculating the "Cash Surrender Value" of the policies.[18]

A condition to the EAA was that the policies "are not, and have not been previously, owned by an entity other than the Policyowner."[19]  In October 2013, FNB acquired Park View by merger, and therefore, also acquired the Bank Owned Life Insurance policies at issue.[20]  After

---

[13] ECF No. 56 at ¶ 4.

[14] Id. at ¶ 5.

[15] Id. at ¶¶ 36, 46.

[16] Id. at ¶ 36.

[17] Id. at ¶¶ 45, 46.

[18] Id. at ¶¶ 41, 45.

[19] Id. at ¶ 46.

[20] Id. at ¶ 47.

4

the merger, Transamerica and FNB executed forms recognizing FNB as the new owner of the policies.[21]

In December 2013, FNB advised Clark that it was surrendering the policies.[22] Clark informed FNB, however, that JPMC might take the position that, in light of the merger, JPMC is not liable to make payment under the EAA if JPMC concludes that Park View – and not FNB – was the original Policyowner.[23] The third-party complaint avers that by no later than December 2013, JPMC was aware of this merger, but nevertheless chose to collect at least $18,000 in monthly fees from Commonwealth General under the EAA while knowing that the ultimate source of those fees was the Fixed Stable Value Subaccount which were borne by FNB in Pennsylvania.[24]

In March 2014, FNB sent Clark a written notice of its desire to surrender the policies, which Clark forwarded to Transamerica, and Transamerica forwarded to JPMC.[25] As Clark predicted to FNB, JPMC took the position that FNB had failed to strictly satisfy the condition in the EAA requiring that the policies had not been previously owned by an entity other than the Policyowner.[26] Thus, JPMC refused to pay the Bank Enhancement Amount in the EAA (approximately $2.5 million) to Commonwealth General.[27] Thus, the third-party complaint asserts that in accordance with the SVA, Commonwealth General deducted this Bank

---

[21] ECF No. 56 at ¶¶ 49, 50.

[22] Id. at ¶ 51.

[23] Id. at ¶ 52.

[24] Id. at ¶ 14.

[25] Id. at ¶ 53.

[26] Id. at ¶ 54.

[27] Id.

Enhancement Amount from the "Investment Value" of the Fixed Stable Value Account.[28] Transamerica then determined that the "Cash Surrender Value" it was obligated to pay FNB for the surrender of the policies was $17,999,586.04, which Transamerica ultimately paid FNB.[29]

Accordingly, FNB initiated the underlying action seeking to recover from Transamerica and Clark the Bank Enhancement Amount that was not included in the Cash Surrender Value calculation. After the Court determined that FNB's suit should not be dismissed,[30] Transamerica and Clark, together with their non-codefendant affiliate Commonwealth General, filed a third-party action against JPMC, asserting that although they believe FNB's suit is without merit, if they are found to have any liability, it will solely be JPMC's fault for failing to pay the Bank Enhancement Amount.[31] JPMC has moved to dismiss the third-party complaint, arguing, *inter alia*, that the Court cannot exercise personal jurisdiction over it. The matter has been fully briefed by the parties,[32] and is ripe for disposition.

---

[28] ECF No. 56 at ¶¶ 55-57.

[29] Id. at ¶ 58.

[30] See Memorandum Opinion and Order from Jan. 23, 2015, First Nat. Bank of Pa. v. Transamerica Life Ins. Co., 2015 WL 321657 (W.D.Pa. 2015).

[31] ECF No. 56 at ¶¶ 60-63.

[32] See ECF Nos. 50, 57, 58, 61, 62, 63, 64. On August 14, 2015, this Court entered a supplemental briefing Order, allowing the parties to expound upon the issue of general personal jurisdiction in light of the Third Circuit's decision Chavez v. Dole Food Co. Inc., 796 F.3d 261 (3d Cir. Aug. 11, 2015), which analyzed the Supreme Court's decision Daimler AG v. Bauman, — U.S. —, 134 S. Ct. 746 (2014). The parties filed their supplemental briefs on August 26, 2015. ECF Nos. 61, 62. However, on September 22, 2015, the Court of Appeals vacated its Opinion and Judgment in *Chavez* after granting a petition for en banc and panel rehearing. Although it appears that panel rehearing was granted only for purposes of resolving a different issue (the first-filed rule), given that Judge Fuentes' dissent expressed agreement with the majority's general personal jurisdiction analysis, see 796 F.3d at 271 n. 2, it was nonetheless vacated entirely. Thus, while the Court has read the parties' submissions of supplemental authority and their attached exhibits and may cite to same if generally applicable to their overall position, the *Chavez* decision itself does not serve as any basis whatsoever for this Court's analysis herein.

### III.    STANDARD OF REVIEW – RULE 12(b)(2)

"The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff, and once a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper."[33] When resolving such disputes, we are required to initially "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."[34] The district court may hold an evidentiary hearing to resolve factual disputes; however, when it does not hold such a hearing, the plaintiff only needs to establish a *prima facie* case of personal jurisdiction.[35]

### IV.    DISCUSSION

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[36] "A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state."[37] Because Pennsylvania is the forum state, we look to Pennsylvania's long-arm statute. "Pennsylvania's long-arm statute provides that its reach is coextensive with the limits placed on the states by the federal constitution."[38] Therefore, our "inquiry is solely

---

[33] Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal marks and citations omitted).

[34] Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002) (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)) (internal marks omitted).

[35] Metcalfe, 566 F.3d at 330 (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).

[36] Walden v. Fiore, — U.S. —, —, 134 S.Ct. 1115, 1121 (2014) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)).

[37] Metcalfe, 566 F.3d at 330 (citing Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).

[38] Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147 (3d Cir. 1996) (citing 42 Pa.C.S. § 5322(b)).

whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause."[39] A court's exercise of personal jurisdiction over a party does not violate due process if either (1) general or all-purpose jurisdiction, or (2) specific or case-linked jurisdiction are present.[40] Third-Party Plaintiffs assert that the Court may exercise personal jurisdiction over JPMC pursuant to both types of personal jurisdiction. Therefore, the Court will discuss each in turn.

1. General Personal Jurisdiction

When a court has general jurisdiction over a foreign (meaning sister-state or foreign country) corporation, the court may "hear any and all claims against [it]," regardless of whether the lawsuit arises from the corporation's conduct in the forum in which the court sits.[41] A court may assert general jurisdiction over a foreign corporation only if its affiliations with the State in which the suit is brought are so continuous and systematic as to render it "**essentially at home** in the forum State."[42] In its most recent decisions on general jurisdiction, the Supreme Court explained in *Goodyear*, and reinforced in *Daimler*, that the "paradigm all-purpose forums" in which a corporation may be fairly regarded as being essentially at home are (1) its place of

---

[39] Brown & Brown, Inc. v. Cola, 745 F.Supp.2d 588, 604 (E.D.Pa. 2010) (citing Mellon Bank (East) PSFA, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).

[40] Goodyear Dunlop Tires Operations, S.A. v. Brown, , — U.S. —, —, 131 S.Ct. 2846, 2851 (2011) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n.9 (1984)).

[41] Id. (citing Int'l Shoe, 326 U.S. at 317).

[42] Id. at 2851 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)) (emphasis added). We note that in its more recent decision *Daimler AG v. Bauman*, the Supreme Court described its holding in *Goodyear* as requiring "constant and pervasive" affiliations with the forum State, rather than "continuous and systematic" affiliations, although no such language can be found in *Goodyear*. See Daimler AG v. Bauman, — U.S. —, —, 134 S. Ct. 746, 751 (2014) (quoting Goodyear, 131 S. Ct. at 2851).

incorporation and (2) its principal place of business.[43] Only in an exceptional case may a court exercise general jurisdiction over a corporation in a State other than its place of incorporation or its principal place of business.[44]

At the outset, we note that JPMC is not a corporation. It is instead a national banking association with its principal place of business located in Ohio. Given that it is chartered under federal law, JPMC is not incorporated under the laws of any particular State.[45] As such, if the general jurisdiction analysis set forth in *Goodyear* and *Daimler* applies equally to national banking associations as it does to corporations, then JPMC is subject to general jurisdiction only in the State where its principal place of business is located (Ohio), unless Third-Party Plaintiffs can demonstrate that this is an exceptional case.

Third-Party plaintiffs aver in their complaint, and repeatedly argue in their briefings, that because JPMC is a national banking association incorporated under federal – not state – law, that for general jurisdiction purposes, JPMC is essentially at home in *any* state in which its business activities are continuous and systematic.[46] Third-Party Plaintiffs claim that asserting general jurisdiction over JPMC in Pennsylvania is not a violation of due process based on the following facts: (1) at the end of 2012, JPMC had a $959,000,000 portfolio of credit card loans in Pennsylvania and each year it derives millions of dollars in revenue from its business activities in Pennsylvania; (2) in the past 10 years, JPMC has filed hundreds of civil actions in federal and

---

[43] Goodyear, 131 S. Ct. at 2853-54; Daimler, 134 S. Ct. 746, at 760.

[44] Daimler, 134 S. Ct. at 760 & n. 19 (describing its prior decision, Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), as "exceptional;" in *Perkins*, the Supreme Court held that the defendant was subject to general jurisdiction in the forum where it temporarily moved its principal place of business during wartime).

[45] ECF No. 56 at ¶ 18.

[46] Id.; ECF No. 57 at 11-13 & n. 4; ECF No. 62 at 3; ECF No. 64 at 2, 3.

state courts in Pennsylvania; (3) JPMC is chartered under federal law; and (4) JPMC maintains an office in Pennsylvania.[47]

JPMC contends, however, that its status as a national banking association is immaterial for purposes of general jurisdiction.[48] According to JPMC, the fact that it is a national banking association does not mean that it is "at home" in every state in which it has continuous and systematic business activities.[49] The Court agrees with JPMC that the "paradigm all-purpose forums" set forth in *Goodyear* and *Daimler* for determining where a corporation is subject to

---

[47] ECF No. 56 at ¶¶ 16-18; ECF No. 57 at 13. Decl. of Zoffer, ECF No. 57-1. Moreover, the Court notes that in arguing that due process would not be violated if the Court asserted general jurisdiction over JPMC, Third-Party Plaintiffs posit that the issue presented is whether the exercise of general jurisdiction "offends traditional notions of fair play and substantial justice." ECF No. 57 at 12 (citing JPMC's Br. in Supp., ECF No. 50 at 12). However, in *Daimler*, the Supreme Court noted that this inquiry into the "reasonableness" or "fair play and substantial justice" factors need only be considered when specific jurisdiction is at issue. See *Daimler*, 134 S. Ct. at 762 n. 20 ("When a corporation is genuinely at home in the forum State, however, any second-step inquiry would be superfluous."). Thus, as explained above, the appropriate analysis for determining whether due process is violated when a court asserts general jurisdiction over a non-resident defendant looks to whether the defendant's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.

[48] ECF No. 50 at 7, 13.

[49] Instead, JPMC claims that its status as a national banking association only affects where it should be deemed a "citizen" for purposes of diversity of citizenship relating to subject matter jurisdiction as prescribed in 28 U.S.C. § 1348 and as interpreted by the Supreme Court in Wachovia Bank v. Schmidt, 546 U.S. 303 (2006). In *Wachovia*, the Supreme Court interpreted § 1348, which provides that national banking associations are "citizens" of the States in which they are respectively "located," to mean that that, for purposes of diversity jurisdiction, a national banking association is a citizen of only the State designated in its articles of association as its main office, not every State in which it has established a branch. 546 U.S. at 307. JPMC claims that *Wachovia's* "analysis of citizenship dovetails completely with where a national banking association is 'at home' under *Daimler*, and the Court rejected the very same argument that [Third-Party] Plaintiffs make here." ECF No. 58 at 5. Third-Party Plaintiffs submit, however, that *Wachovia* is inapplicable herein because it only considered the issue of subject matter jurisdiction with regard to national banking associations when personal jurisdiction was not being challenged. ECF No. 57 at 12. Indeed, *Wachovia* noted that a national banking association may be subject to personal jurisdiction in more States than where it is deemed a "citizen," depending on its business contacts with the forum. Wachovia, 546 U.S. at 318. Thus, because § 1348 and the caselaw interpreting it, including *Wachovia*, do not discuss where national banking associations are subject to general jurisdiction, this authority does not serve as a basis for the Court's decision on this issue.

general jurisdiction – its place of incorporation and its principal place of business – also determine where national banking associations are subject to general jurisdiction.

Third-Party Plaintiffs have not cited, and this Court's research has not uncovered, any caselaw in support of Third-Party Plaintiffs' argument that federally chartered entities are subject to general jurisdiction in every state in which their business activities are continuous and systematic. The plaintiffs in *Daimler* made the exact same argument pertaining to corporations as the Third-Party Plaintiffs make herein, which the Supreme Court expressly rejected. *Daimler* held that the plaintiff's argument that a corporation should be subject to general jurisdiction in every State in which it "engages in a substantial, continuous, and systematic course of business" was "unacceptably grasping."[50]

Third-Party Plaintiffs essentially argue, however, that this route for assessing the general jurisdiction of national banking associations ends in an unfair result, claiming that while "most large commercial or industrial corporations are subject to general personal jurisdiction in at least two states − the state where they are incorporated and the state where they maintained their principal place of business − federally-chartered National Banking Associations are subject to general personal jurisdiction in at most one state."[51] We note, however, that it is not uncommon for a corporation's place of incorporation and principal place of business to be the same, thereby resulting in it being subject to general jurisdiction in only one State under *Daimler*, absent exceptional circumstances. Indeed, in its discussion that jurisdictional rules should be easily ascertainable and predictable, *Daimler* recognized this fact by stating that "[t]hese bases afford plaintiffs recourse to *at least one clear and certain* forum in which a corporate defendant may be

---

[50] Daimler, 134 S. Ct. at 761.

[51] ECF No. 57 at 12 n. 4 (emphasis in original).

11

sued on any and all claims."[52] As such, *Daimler* allows, but certainly does not require, that a corporation be subject to general jurisdiction in two States. Accordingly, Third-Party Plaintiffs have failed to identify any sound reason or provide any caselaw to justify treating national banking associations so drastically different than corporations when conducting a general jurisdiction analysis.

Third-Party Plaintiffs have likewise failed to show why JPMC should be deemed to be essentially at home in Pennsylvania based on the substantial annual revenue that JPMC generates in Pennsylvania, the hundreds of lawsuits that JPMC has filed in Pennsylvania over the past decade, and the presence of an office in Pennsylvania. As set forth in Justice Sotomayor's concurrence in *Daimler*, almost all of these factors were also present in that case. Justice Sotomayor discussed the contacts of Mercedes-Benz USA, LLC ("MBUSA") in California as follows:

> It has multiple facilities in the State, including a regional headquarters. Each year, it distributes in California tens of thousands of cars, the sale of which generated billions of dollars in the year the suit was brought. And it provides service and sales support to customers throughout the State.[53]

Justice Sotomayor further noted that, in particular, "MBUSA's California sales account for 2.4% of Daimler's worldwide sales, which were $192 billion in 2004. And 2.4% of $192 billion is $4.6 billion."[54] Notwithstanding the existence of these facts, however, the majority found that even when assuming that MBUSA's contacts with California could be attributed to its parent company Daimler AG, the exercise of general jurisdiction over Daimler AG was improper

---

[52] Daimler, 134 S. Ct. at 760 (emphasis added).

[53] 134 S. Ct. at 763 (Sotomayor, J., concurrence).

[54] Id. at 766-67.

12

because California was not MBUSA's place of incorporation or principal place of business, and the facts of the case were not exceptional.[55]

In this case, while JPMC's credit card loans in Pennsylvania totaled $959 million in 2012, it extended $26.3 billion in credit card loans that year across several states.[56] Thus, Pennsylvania represented 3.6% of JPMC's total credit card lending in 2012. Additionally, Pennsylvania's credit card loans accounted for 1.6% of JPMC's total net revenue of $71 billion in 2012.[57] Against this backdrop, and in accordance with *Daimler*, the fact that JPMC generates substantial annual revenue in Pennsylvania does not form a basis to conclude that JPMC is essentially at home in Pennsylvania.[58] Further, the fact that JPMC maintains an office in Pennsylvania does not establish general jurisdiction here, given that Pennsylvania is not its principal place of business.[59] Nor does the fact that JPMC has filed hundreds of federal and state lawsuits in Pennsylvania over the past decade constitute a basis for concluding that JPMC is essentially at home in Pennsylvania under *Daimler*, especially given that Third-Party Plaintiffs have not established that JPMC has disproportionally filed lawsuits in Pennsylvania as compared to other States in which it regularly conducts business.[60]

---

[55] Id. at 761-62 & n. 19 (Ginsburg, J., majority).

[56] Gisleson Decl., ECF No. 61-1.

[57] Id. Additionally, JPMC submits that in 2012, the percentage of its U.S. loans in Pennsylvania (3.64%) was commensurate with the percentage of Americans living in Pennsylvania (4.06%).

[58] See also Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 611 (5th Cir. 2008).

[59] Daimler, 134 S. Ct. at 761-62 (Ginsburg, J., majority); id. at 763 (Sotomayor, J., concurring).

[60] Cf. Merlino v. Harrah's Ent., Inc., 2006 WL 401847, *3 (E.D.Pa. 2006) ("Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction."); Senju Phara. Co. , Ltd. v. Metrics, Inc., 96 F.Supp.3d 428, 441 n. 8 (D.N.J. 2015) (litigation in the forum State does not by itself establish personal jurisdiction); Silec Cable S.A.S. v. Alcoa Fjardaal, SF, 2012 WL 5906535, *13 (W.D.Pa. 2012) ("[D]istrict courts have held that a

Indeed, an entity "that operates in many places can scarcely be deemed at home in all of them."[61] Applying Third-Party Plaintiffs' proposed test – that a national banking association should be subject to general jurisdiction in every place that it conducts continuous and systematic business – would not only impermissibly create great uncertainty as to where national banking associations are subject to general jurisdiction, but would also constitute an unwarranted departure from *Daimler's* explicit holding and the reasoning it employed in reaching that conclusion. *Daimler* specifically warned that "[s]uch exorbitant exercises of all-purpose jurisdiction" in every State in which an entity's sales are "sizable" "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit.'"[62] To that end, *Daimler* declared that "[i]t is one thing to hold [an entity] answerable for operations in the forum State, … quite another to expose it to suit on claims having no connection whatever to the forum State."[63] A different result should not be reached in this case merely because JPMC is a national banking association rather than a corporation. Accordingly, given that JPMC is not incorporated under Pennsylvania law and its principal place of business is not in Pennsylvania, and because Third-Party Plaintiffs have failed to demonstrate that this case is exceptional, we may not assert general jurisdiction over JPMC.

---

    party's filing of multiple *unrelated* lawsuits within a jurisdiction is insufficient to establish personal jurisdiction over a non-resident defendant.") (emphasis in original).

[61] Daimler, 134 S. Ct. at 763 n. 20.

[62] Id. at 761-62.

[63] Id. at 761 n. 19.

14

2. Specific Personal Jurisdiction

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"[64] Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the state's regulation."[65] "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[66] "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts … such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"[67]

This "minimum contacts" analysis focuses on whether the defendant's relationship arises out of the suit-related contacts that the *defendant itself* had with the forum State.[68] "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'"[69] Additionally, this "minimum contacts" analysis looks to the "defendant's contacts with the

---

[64] Goodyear, 131 S. Ct. at 2851 (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)).

[65] Id.

[66] Walden, 134 S. Ct. at 1121 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) and Saffer v. Heitner, 433 U.S. 186, 204 (1977)) (internal quotation marks omitted).

[67] Id. (quoting Int'l Shoe, 326 U.S. 310, 316 (1945) and Milliken v. Meyer, 311 U.S. 457, 463 (1940)) (alterations in original)

[68] Id. at 1121-22.

[69] Id. at 1122 (citing Rush v. Savchuk, 444 U.S. 320, 332 (1980)).

forum State itself, not the defendant's contacts with persons who reside there."[70] In other words, a defendant may not be haled into court in a forum State based on "random, fortuitous, or attenuated" contacts that it makes with other persons or entities affiliated with the State.[71] "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."[72] "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[73]

Moreover, "in contract claims we analyze the totality of the circumstances surrounding a contract,"[74] including "the location and character of the contract negotiations; whether the non-resident solicited business from the forum state; whether the non-resident invoked and received benefits under the laws of the forum state; the contemplated future consequences of the contract; the terms and provisions of the contract; and the parties' course of dealing."[75] In light of these factors, JPMC asserts the following:

> Plaintiffs have failed to plead even one of these requisite jurisdictional facts: there are *zero* allegations in the [Third-Party] Complaint that JPMC negotiated the terms of the EAA with Commonwealth General in Pennsylvania; that JPMC entered into the EAA with Commonwealth General in Pennsylvania; that JPMC ever had *any* contact with or interaction with FNB (the only Pennsylvania party in this action) concerning the EAA, let alone any contact or interaction with FNB in Pennsylvania; or that JPMC attempted to pursue or exercise its rights under the EAA in Pennsylvania or under Pennsylvania law … The only party in the chain of contracts that JPMC ever interacted with was Commonwealth General … It is

---

[70] Id. (citing Int'l Shoe, 326 U.S. at 319).

[71] Id. at 1123 (quoting Burger King, 471 U.S. at 475).

[72] Id. at 1125.

[73] Id.

[74] Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99 (3d Cir. 2004) (citation omitted).

[75] Hufnagel v. Ciamacco, 281 F.R.D. 238, 246 (W.D.Pa. 2012) (citations omitted).

16

purely random that JPMC finds itself litigating the EAA in Pennsylvania, given that it entered the EAA with an *Iowa* company with respect to a policy insuring an *Ohio* bank.[76]

JPMC further asserts that:

> The plain text of the EAA similarly reveals that Pennsylvania was never contemplated as a possible forum for litigating a dispute arising from JPMC's contractual relationship with Commonwealth General. The EAA explicitly states that any disputes arising under the agreement are to be resolved under New York law, not Pennsylvania law, and it exempts JPMC from owing any obligations to any party other than Iowa-based Commonwealth General. Moreover, the SVA, which was attached to the EAA, clearly states that it is governed by Iowa law and was entered into by representatives of Transamerica and Commonwealth General, both of whom maintain their principal places of business in Iowa …[77]

Third-Party Plaintiffs do not dispute the accurateness of the above facts.[78] They instead claim that the Court may assert specific jurisdiction over JPMC merely because JPMC knew of the Park View-FNB merger, which resulted in FNB (a Pennsylvania-based national banking association) becoming the Policyowner of the insurance policies. Because JPMC reviewed the EAA in light of the merger, and "made a conscious decision to continue to collect" approximately $18,000 in fees paid from Commonwealth General (a corporation incorporated in Delaware with its principal place of business in Iowa) with knowledge that the ultimate source of the payments was the Fixed Stable Value Subaccount which was being funded by FNB in Pennsylvania, Third-Party Plaintiffs argue that assertion of specific jurisdiction over JPMC in

---

[76] ECF No. 50 at 16 (emphasis in original; internal caselaw citation and record citations omitted).

[77] Id. at 17-18.

[78] The Court notes, however, that while the EAA provides that JPMC owes no obligations to any third-parties, Third-Party Plaintiffs assert that such provisions are not dispositive under New York law. ECF No. 57 at 3. Regardless of whether this provision is enforceable under New York law, however, it is simply another factor which indicates that JPMC did not contemplate being haled into a Pennsylvania court at the time when it entered into the EAA with Commonwealth General.

Pennsylvania is appropriate.[79] They contend that this shows that JPMC essentially made a new, affirmative decision to do business with a Pennsylvania resident.[80]

However, the Court initially observes that adoption of this argument would impermissibly subject JPMC to specific jurisdiction in Pennsylvania "based on the 'random, fortuitous, or attenuated' contacts [it] mad[e] by interacting with other [entities] affiliated with the State."[81] Third-Party Plaintiffs identify no solicitation, no communication, no direct exchange of payments, no contract, or any other form of contact between JPMC and FNB. Therefore, Third-Party Plaintiffs' argument that JPMC effectively made a new decision to do business with FNB when there was no contact whatsoever between the two is without merit. If anything, these allegations against JPMC amount to passive conduct, given that JPMC simply decided *not* to take any actions under the EAA. Such passive conduct is not a basis to subject JPMC to specific jurisdiction.[82]

Moreover, as the Supreme Court recently made clear in *Walden,* a defendant's knowledge of a plaintiff's existence in the forum State or knowledge that its conduct may cause a plaintiff to experience harm in the forum State are insufficient justifications for establishing specific jurisdiction.[83] Therefore, even if JPMC had knowledge that the fee it was receiving under the

---

[79] ECF No. 57 at 14.

[80] Id. at 15.

[81] See Walden, 134 S. Ct. at 1123 (quoting Burger King, 471 U.S. at 475).

[82] See Regional Employers' Assur. Leagues Voluntary Employees Benefiicary Trust v. Michael O'Brien, D.M.D., P.C., 2013 WL 6050494, *8 (E.D.Pa. 2013) (passive participation in enrollment plan does not establish specific jurisdiction).

[83] Walden, 134 S. Ct. at 1124-25 (a Georgia police officer who seized cash from airline passengers who were headed to Nevada at an Atlanta airport did not have sufficient minimum contacts with Nevada for a Nevada court to assert specific jurisdiction when all of the officer's conduct occurred in Georgia, notwithstanding that officer knew that the passengers had connections to Nevada); see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 802 (7th Cir.

EAA from Commonwealth General was ultimately funded by FNB in Pennsylvania via the Fixed Stable Value Subaccount, under *Walden*, this does not subject JPMC to specific jurisdiction in Pennsylvania.

We are to focus on whether the nonresident defendant's conduct connects it to the forum State in a meaningful way.[84] Significantly, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[85] It is clear that under these circumstances, JPMC's acceptance of money from Commonwealth General under the EAA that JPMC knew was ultimately traceable to FNB in Pennsylvania did not create the necessary minimum contacts with Pennsylvania. Because "the plaintiff cannot be the only link between the defendant and the forum.," it would be improper to exercise specific jurisdiction over JPMC in Pennsylvania based on FNB's relationship and connections with Pennsylvania.[86] Thus, Third-Party Plaintiffs have not established that JPMC has made any meaningful contacts or relationships with Pennsylvania under the EAA. Consequently, the Court cannot exercise specific jurisdiction over JPMC.

## V. CONCLUSION

In accordance with the foregoing, Third-Party Plaintiffs have failed to make a prima facie case of personal jurisdiction. As a result, the Court cannot exercise personal jurisdiction over

---

2014) (in light of *Walden*, a defendant's mere knowledge that the plaintiff was an Indiana company did not establish personal jurisdiction in Indiana, as "there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum"); Fastpath, Inc. v. Abrela Technologies Corp., 760 F.3d 816, 823 (8th Cir. 2014) ("Even if [the defendant] solicited the Agreement knowing that [the plaintiff] was an Iowa corporation, that knowledge cannot create minimum contacts with Iowa because 'the plaintiff cannot be the only link between the defendant and the forum' … To find otherwise would 'improperly attribute[] a plaintiff's forum connections to the defendant and to make[] those connections decisive in the jurisdictional analysis.'") (quoting Walden, 134 S. Ct. at 1125).

[84] Walden, 134 S. Ct. at 1125.

[85] Id. at 1126.

[86] Id. at 1122.

JPMC.  Therefore, JPMC's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is granted, and the third-party complaint is dismissed without prejudice.[87]  An appropriate Order follows.

Dated: February 10, 2016.

                                                 By the Court:

                                                 s/ Cynthia Reed Eddy
                                                 Cynthia Reed Eddy
                                                 United States Magistrate Judge

cc: all registered counsel via CM-ECF

---

[87] See Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir. 1944) (dismissal of a complaint for lack of personal jurisdiction is to be entered without prejudice).